# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>DOUGLAS OMAR DOBLADO-CABRERA,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:18-CR-493-JNP<br><br>District Judge Jill N. Parrish |

This matter comes before the court on a motion to dismiss the information filed by defendant Douglas Omar Doblado-Cabrera on March 20, 2019. (ECF No. 18). The government responded in opposition on April 3, 2019 (ECF No. 22), and Mr. Doblado-Cabrera filed a reply on April 18, 2019 (ECF No. 26). For the reasons below, the motion to dismiss is denied.

## I. BACKGROUND

Mr. Doblado-Cabrera was first encountered by immigration officials at the Denver City jail on June 5, 2009. After admitting that he was a native and citizen of Honduras, and that he had entered the United States without inspection, he was taken into custody by Immigration and Customs Enforcement ("ICE") on June 22, 2009. That same day he was personally served with a Notice to Appear ("NTA") that charged him with being removable from the country. The NTA ordered him to appear before an immigration judge ("IJ") at the custodial facility "on a date to be set at a time to be set to show why [he] should not be removed from the United States." But after being served with the NTA, Mr. Dobaldo-Cabrera executed a Stipulated Request for Order by which he waived his right to that hearing and admitted that he was removable as alleged by the

NTA. On July 30, 2009, he was deported to Honduras. Since his initial removal, Mr. Doblado-Cabrera has re-entered the United States unlawfully three times, again being deported in 2012, 2013, and 2014.

On July 18, 2017, ICE discovered that Mr. Doblado-Cabrera had yet again entered the United States after he was arrested in Salt Lake City, Utah. After his conviction and sentence for several state felony offenses including possession with intent to distribute a controlled substance, he was released into ICE custody on October 16, 2018.

On November 2, 2018, the United States filed an information against Mr. Doblado-Cabrera, charging him with illegal reentry in violation of 8 U.S.C. § 1326(a).[1]

## II. ANALYSIS

8 U.S.C. § 1326(a) imposes criminal penalties "on any alien who . . . has been . . . deported, or removed . . . while an order of . . . deportation, or removal is outstanding, and thereafter enters, attempts to enter, or is at any time found in, the United States." While the government bears the burden to prove each element of § 1326(a), subsection (d) forbids an alien from asserting challenges to the validity of the predicate removal order unless the alien can show that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." § 1326(d).

With this motion, Mr. Doblado-Cabrera undeniably seeks to challenge the validity of the 2009 removal order, but he makes no attempt to meet this exacting standard.[2] Instead, he

---

[1] The instant illegal reentry charge is predicated on the order of removal from 2014. Because the 2014 removal was itself based on the 2009 removal order, the parties appear to agree that it is the validity of the 2009 removal that is dispositive of the instant reentry charge.

attempts to do an end-run around the requirements, arguing that his deportation order is void in the first instance. The order is void, Mr. Doblado-Cabrera argues, because the NTA with which he was served failed to specify the date and time of his removal hearing and that, as a result, the immigration judge was without subject-matter jurisdiction to grant his request to waive that hearing and order his removal. In essence, he argues that he need not attack the order at all because it is without legal effect.

Mr. Doblado-Cabrera's argument is premised on the Supreme Court's recent decision in *United States v. Pereira*, 138 S. Ct. 2105 (2018), in which the court addressed the "narrow question" of whether an NTA "that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger[s] the stop-time rule[.]" *Id.* at 2113. The stop-time rule relates to the calculation of time for eligibility to seek discretionary cancellation of removal for aliens who, among other conditions, have been continuously present in the United States for 10 or more years. *See* 8 U.S.C. § 1229(b)(1). Under the stop-time rule, the period of continuous presence is deemed to end "when the alien is served a notice to appear under section 1229(a) of this title." § 1229b(d)(1)(A).

The Court held that "based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Id.* at 2114 (quoting § 1229(a)(1)(G)(i)). Importantly, the stop-time rule expressly references the statutory definition of an NTA, which unambiguously requires that such document provide the alien with the "time and place at which

---

[2] It appears that Mr. Doblado-Cabrera's waiver of his right to appeal the 2009 removal order to the Board of Immigration Appeals forecloses, on its own, any collateral attack of that order. *See United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) ("An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1).").

the proceedings will be held." § 1229(a)(1)(G)(i). Thus, the court repeatedly cautioned that "[t]he narrow question in this case lies at the intersection of those statutory provisions." *Pereira*, 138 S. Ct. at 2110.

Mr. Doblado-Cabrera seeks to substantially enlarge the effect of *Pereira*, arguing that a removal order entered after service of an NTA that does not specify the time of the removal hearing is issued in excess of jurisdiction. In support of this argument, Mr. Doblado-Cabrera wields jurisdictional axioms from cases discussing the subject-matter jurisdiction of federal courts. But while it is uncontroversial that a federal court's entry of an order in a case without both Article III and statutory subject-matter jurisdiction is void ab initio, the proposition that a notice to appear that fails to include the time of the hearing vitiates an IJ's subject-matter jurisdiction over removal proceedings is far from self-evident. Indeed, Congress has nowhere limited the subject-matter jurisdiction of immigration courts on the basis of a charging document. *See Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) ("Section 1229 says nothing about the Immigration Court's jurisdiction."). Instead, Mr. Doblado-Cabrera seeks to import the case law from the Article III subject-matter jurisdiction context and apply those principles to a Department of Justice regulation that declares that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a[n NTA] is filed with the Immigration Court by the [Department of Homeland Security]." 8 C.F.R. § 1003.14(a).

But even accepting that this regulation operates akin to subject-matter jurisdiction in the Article III/Title 28 context, the jurisdictional regulation does not refer to the statutory definition of an NTA (the provision interpreted by *Pereira*). Instead the regulation creates a separate definition of an NTA. *See* 8 C.F.R. § 1003.15. The regulatory definition of an NTA does not require that an NTA specify the date and time of the hearing. *Id.* Accordingly, insofar as it is

4

accurate that an NTA must contain certain elements before an IJ is vested with subject-matter jurisdiction, the NTA at issue here was not deficient. Thus, even if an agency-promulgated regulation is capable of imposing a jurisdictional cliff like that created by Article III of the Constitution and Title 28 of the United States Code, the IJ did not exceed its regulatory jurisdiction here in the first instance.[3]

In short, because Mr. Doblado-Cabrera has not made the showings required by 8 U.S.C. § 1326(d) to collaterally attack his initial deportation order, and further because he is not excused from those requirements, his motion to dismiss must be denied.

Signed May 9, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[3] Relying on this and other rationales, all five courts of appeals to have considered the argument that *Pereira* divests an IJ of subject-matter jurisdiction have rejected it. *See Banegas Gomez v. Barr*, --- F.3d ----, No. 15-3269, 2019 WL 1768914, at *6–7 (2d Cir. Apr. 23, 2019); *Soriano-Mendosa v. Barr*, No. 18-9535, 2019 WL 1531499, at *4 (10th Cir. Apr. 9, 2019) (unpublished); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160–62 (9th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 311–15 (6th Cir. 2018); *Leonard v. Whitaker*, 746 F. App'x 269, 269–70 (4th Cir. 2018) (unpublished).

5